**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| R.F. ON BEHALF OF HIS CHILD AND R.F., INDIVIDUALLY,<br><br>*Plaintiffs*,<br><br>v.<br><br>BOARD OF EDUCATION OF THE TOWNSHIP OF MONTCLAIR, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-18488<br><br>**OPINION**<br><br>September 30, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Defendants Board of Education of the Township of Montclair, Damon Cooper, Shivoyne Trim, and Danielle Kupperman ("collectively, "Defendants").[1] (ECF 2, "Motion" or "Mot.") Plaintiff R.F., individually and on behalf of his minor child O.F., filed a brief in opposition to Defendants' Motion. (ECF 3, "Opposition" or "Opp.") Defendants did not file a reply brief. The Motion was decided by the Court upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

[1] Individually named Defendants Terrance Somerville, Maggie Shaver-Dock, and Christina Hunt are no longer employed by the Board of Education, and they have not been served in this matter. (ECF 1, "Notice of Removal" or "Notice" ¶ 3.)

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. The Bullying

This action arises out of alleged claims of bullying and retaliation against minor Plaintiff O.F., who was a new student at Northeast Elementary School in Montclair, New Jersey during the 2022–2023 school year. (Compl. ¶ 2.) Northeast Elementary School (the "School") is overseen and operated by the Board of Education of the Township of Montclair (the "Board"). (*Id.* ¶ 3.) Beginning in or around October 2022, O.F. was subjected to physical assaults, racial, gender-based and sexualized harassment, and exclusion from classroom activities. (*Id*. ¶¶ 14, 25-26, 28-29, 31.) O.F.'s classmates allegedly kicked him in the genitals, taunted him about being a girl (when O.F. presumably does not identify as a female), and referred to him as their "wife," while referring to themselves as his "husband." (*Id.* ¶ 14.) The alleged harassment continued throughout the year. (*Id.* ¶¶ 24-26, 29-31, 35.) On January 13, 2023, O.F.'s classmates targeted him in a "mock raffle" involving repeated references to his sexual organs. (*Id.* ¶ 25.) On January 19, an "Asian rap" video was circulated mocking O.F.'s ethnicity. (*Id.* ¶ 26.) On February 13, O.F. was called "gay" and subjected to homophobic name-calling. (*Id.* ¶ 29.) On February 17, O.F. was excluded from a Jenga game and classroom activities. (*Id.* ¶ 30.). On April 26, O.F. had a ball "deliberately" thrown at his face by a classmate he had prior issues with, causing his glasses to break and leaving

[2] The facts and procedural history are derived from the Complaint (ECF 1, Exhibit A, "Complaint" or "Compl."). When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated "to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996). The Court also considers matters of public record and "undisputedly authentic document[s attached to a defendant's] motion to dismiss if [a] plaintiff's claims are based on the document." *See Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

bruising. (*Id.* ¶ 31.) On May 18, O.F.'s classmate called O.F. a "snitch" and threatened that he was "dead." (*Id.* ¶ 35.)

**B. The Complaints and Investigation**

Plaintiff R.F., O.F.'s father, began reporting the harassment to the School on October 11, 2022, when he emailed O.F.'s homeroom teacher and informed them that he observed O.F. walking with a limp, wetting his pants, and expressing fear of his classmates. (*Id.* ¶¶ 15-16.) On October 15, R.F. emailed Defendant Danielle Kupperman ("Kupperman"), the school counselor, to report the alleged assaults and taunting. (*Id.* ¶ 17.) Rather than investigating the assault, Kupperman allegedly focused on a comment O.F. made about another student and deflected from the reports of bullying. (*Id.* ¶ 49.) On October 16, 20, and 24, R.F. emailed Defendant Terrence Somerville ("Somerville"), the School's Principal, to report the assaults and taunts. (*Id.* ¶ 47.)

R.F. submitted a formal Harassment, Intimidation, and Bullying ("HIB") complaint on October 20, regarding the alleged incidents. (*Id.* ¶ 18.) Under the New Jersey Anti-Bullying Bill of Rights Act (the "Anti-Bullying Act"), N.J. Stat. Ann. § 18A:37-13 *et seq.*, the School is statutorily obligated to prevent HIB and investigate and remediate complaints of HIB. (Compl. ¶ 12.) On November 15, Somerville informed O.F.'s parents that the October complaint would not be treated as HIB nor be investigated. (*Id.* ¶¶ 20, 48.) On November 17, R.F. spoke with the Board's Anti-Bullying Specialist, Defendant Maggie Shaver-Dock ("Shaver-Dock"), who acknowledged she was not made aware of the reported incidents and informed R.F. she would reopen the complaint. (*Id.* ¶ 21.) On January 3, 2023, Shaver-Dock issued a "non-HIB" determination, concluding the conduct did not meet the statutory criteria for HIB. (*Id.* ¶ 22.) R.F. appealed that determination to the Board. (*Id.* ¶ 23.) R.F. continued to report incidents as they occurred to Defendants, with O.F. providing contemporaneous handwritten accounts. (*Id.* ¶¶ 24-

31.) The January 13 incident was also not handled as an HIB matter and the Board dismissed the January 19 and February 13 complaints as non-HIB as well. (*Id.* ¶¶ 25, 28-29.)

On March 6, 2023, R.F. was notified that O.F. was under investigation as a purported HIB offender. (*Id.* ¶ 33.) On March 7, the Board upheld the non-HIB finding of the October Complaint. (*Id.* ¶ 34.) On May 22, Shaver-Dock found O.F. "guilty" of HIB arising from the February 17 incident. (*Id.* ¶ 36.) O.F.'s parents appealed this determination, and on July 13, the Interim Director of Pupil Services informed R.F. that the HIB finding against O.F. had been "reversed." (*Id.* ¶¶ 37-38.) However, on September 1, the Board's counsel informed R.F. that the HIB finding against O.F. was upheld. (*Id.* ¶ 39.)

R.F. appealed the Board's determinations with respect to the October complaint and HIB finding against O.F. to the Office of Administrative Law. (*Id.* ¶ 40.) The Administrative Law Judge ("ALJ") held for the Board, concluding that although the Board did not comply with the Anti-Bullying Act's statutory timeframes, both sides contributed to the delay. (*See id.* ¶ 43.) R.F. alleges that the ALJ excluded evidence of retaliation. (*Id.*) On October 10, 2024, the Acting Commissioner of Education adopted the ALJ's decision with modifications. (*Id.*) The Commissioner then finalized another ALJ's issued decision on "a separate consolidated matter" on December 2, 2024. (Opp. at 9.) During the ALJ proceedings, R.F. discovered that the Board's independent investigator recommended a no-HIB finding for both the October complaint and the HIB allegations against O.F. (Compl. ¶ 40.) Superintendent Jonathan Ponds ("Ponds") likewise recommended a no-HIB finding for O.F. (*Id.* ¶ 41.) R.F. appealed both ALJ outcomes to the Appellate Division, where the matters remain pending.[3] (*Id.* ¶ 44.)

[3] The two matters pending before the Appellate Division are (1) the initial HIB complaint *R.F. o/b/o O.F. v. Montclair Board of Education*, bearing Appellate Docket No. A-000815-24; and (2)

On March 20, 2025, Shaver-Dock filed a whistleblower lawsuit against the Board, alleging: Ponds directed her to alter HIB reports, conceal incidents, and retaliate against those who bring complaints; Defendant Christina Hunt, the Board Secretary, ignored timely HIB reporting requests; Defendant Shivoyne Trim instructed Shaver-Dock to "fix perceptions," and disregard noncompliance by "untouchable" principals; and Defendant Damon Cooper, then the District's Director of Secondary Education, failed to intervene when principals berated Shaver-Dock for raising concerns about noncompliance with the Anti-Bullying Act. (*Id.* ¶¶ 45, 51-55.) Plaintiffs allege Shaver-Dock's lawsuit confirms that the Defendants engaged in systemic violations of the Anti-Bullying Act, retaliated against those who made HIB reports, and issued false determinations. (*Id.* ¶ 46.)

### C. Procedural History

On November 4, 2025, Plaintiffs commenced this action against Defendants in the Superior Court of New Jersey, Essex County, Case No. ESX-L-8485-25. (*See generally id.*) Plaintiffs allege nine counts arising from Defendants' alleged noncompliance with the Anti-Bullying Act: deprivation of equal protection, due process, and a *Monell* clam in violation of the New Jersey Civil Rights Act and the U.S. Constitution pursuant to 42 U.S.C. § 1983 (Counts I-III); discrimination and retaliation in violation of the New Jersey Law Against Discrimination, Title IX, and Title VI (Counts IV-VI); negligence and intentional infliction of emotional distress in violation of state law (Counts VII-IX). (*Id.*) On December 10, 2025, Defendants removed the action to this Court. (*See* Notice.) Defendants moved to dismiss on January 9, 2026. (*See* Mot.) Plaintiffs filed their opposition brief on May 5, 2026. (*See* Opp.)

---

the retaliation complaint *R.F. o/b/o O.F. v. Montclair Board of Education*, bearing Appellate Docket No. A-1777-24. (*See* Mot. at 9.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under the Rule, it "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

## III. ANALYSIS

### A. Statute of Limitations

Defendants first argue that Plaintiffs are unable to bring claims arising out of events that occurred during the 2022-2023 academic year because they initiated this action after the applicable two-year statute of limitations. (*See* Mot. at 12-13.) In response, Plaintiffs argue that their claims are tolled under the State's minority tolling statute, N.J. Stat. Ann. § 2A:14-21, until O.F. reaches the age of majority. (*See* Opp. at 12-13.) Furthermore, Plaintiffs argue that even if tolling did not apply, the injuries giving rise to their claims did not become final until the Commissioner of Education adopted and modified the ALJs' HIB decisions in November and December 2024. (*Id.* at 15.) Plaintiffs also argue that Shaver-Dock's whistleblower action, initiated on March 20, 2025,

postponed the accrual of their claim under the discovery rule. (*Id.* at 17.) The Court agrees with Plaintiffs and finds that the Complaint is not barred by the applicable statute of limitations.

1. The Applicable Statute of Limitations Is Tolled by N.J. Stat. Ann. § 2A:12-21

New Jersey's two-year statute of limitations for personal injury actions, N.J. Stat. Ann. § 2A:14-2, applies to discrimination claims, which are construed as personal injury claims for statute of limitations purposes. *See Montells v. Haynes*, 627 A.2d 654, 655, 658-59 (1993) ("[W]e conclude that a single statute of limitations should apply to all [Law Against Discrimination] claims. Finding that injuries under LAD are most like personal-injury claims … the two-year personal injury statute of limitations should apply."); *see also Andreyko v. Sunrise Senior Living, Inc.*, 993 F. Supp. 2d 475, 479 (D.N.J. 2014) ("The statute of limitations under N.J. Stat. Ann. § 2A:14-2 applies to actions for personal injuries …." (quoting *Rothman v. Silber*, 199 A.2d 86, 88 (N.J. Super. Ct. Law Div. Mar. 26, 1964))). Moreover, state statute of limitations for personal injury actions apply to federal civil rights claims brought under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 279 (1985) ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983.").

Defendants argue that New Jersey's statute of limitations bars Plaintiffs' claims. (Mot. at 12-13.) More specifically, Defendants state that "the last incident alleged to have occurred causing injury was the Defendant Board's finding against O.F. on May 22, 2023," which after appeal, "was communicated to R.F. on September 1, 2023." (*Id.* at 14.) Therefore, Plaintiffs' injuries accrued on the September 1, 2023 date of communication and their filing of this action on November 4, 2025 exceeds the statute of limitations by about two months. (*See id.*) Plaintiffs do not dispute that their claims are generally subject to the statute of limitations absent tolling. (*See* Opp.) Rather,

Plaintiffs argue that the operation of tolling is decided by state law, and in this instance, the statute of limitations is tolled by N.J. Stat. Ann. § 2A:14-21, which states in relevant part:

> If a person entitled to commence an action or proceeding specified in N.J.S.2A:14-1 to 2A:14-8 or N.J.S.2A:14-16 to 2A:14-20 or to a right or title of entry under N.J.S.2A:14-6 is under the age of 18 years … the person may commence the action or make the entry, within the time as limited by those statutes, after reaching majority ….

N.J. Stat. Ann. § 2A:14-21. (*See* Opp. at 12-13.) Because discrimination claims are construed as personal injury claims for statute of limitations purposes, *see Montelles*, 627 A.2d at 658-59; *Wilson*, 471 U.S. at 279, the Court finds that Plaintiffs' claims fall under § 2A:14-2, which the minority tolling statute explicitly applies to per the first sentence of § 2A:14-21. In addition to the plain text of the statute, Plaintiffs cite to *LaFage v. Jani*, 766 A.2d 1066, 1073 (N.J. 2001), in which the Supreme Court of New Jersey, interpreting § 2A:14-21, held "if a personal injury claimant is less than eighteen when the cause of action accrues, the statute of limitations is tolled for two years after the person reaches his or her majority." Although *LaFage* held that minority tolling applies to wrongful death claims, minority tolling has been held to apply in other contexts as well, including in personal injury suits against public entities. *See Hojnowski v. Vans Skate Park*, 901 A2d 381, 383 (N.J. 2006) (holding the minority tolling statute protects a minor's right to sue for most personal injuries for two years after reaching the age of majority). Indeed, the Supreme Court of New Jersey subsequently adopted the reasoning of Justice Pashman in *O'Connor v. Altus*, 335 A.2d 545 (N.J. 1975), in which he concurred, "[a] child is not expected to understand or act upon his legal rights; he should not be made to suffer for failure to do so. Nor should he be penalized for the ignorance or neglect of his parents or guardian in failing to assert those rights." *O'Connor*, 335 A.2d at 558-59 (Pashman, J., concurring in part and dissenting in

part); *see Hojnowski*, 901 A2d at 383.[4] Accordingly, the Court holds that Plaintiffs' claims were timely brought pursuant to § 2A:14-21, and the Court need not decide Plaintiffs' accrual arguments.

**B. Standing**

Next, Defendants seek dismissal of R.F.'s individual capacity claims, which Defendants argue are based solely on alleged violations of O.F.'s statutory or civil rights, due to lack of standing. (Mot. at 15.) First, Defendants argue R.F. has not suffered an injury-in-fact under Article III. (*Id.* at 16-17.) Second, Defendants argue that the prudential rule against asserting another individual's rights should result in the dismissal of R.F.'s individual claims. (*Id.* at 17); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014).

In response, Plaintiffs argue that R.F. was injured by Defendants' retaliatory acts—specifically their responses to R.F.'s formal complaints raised to the School. (Opp. at 29.) Plaintiffs argue that Defendants' retaliatory acts, which give rise to a retaliation claim under Title IX,[5] include "investigations against O.F., label[ing] him a HIB offender, and issu[ing] or

[4] Additionally, multiple courts have held that minority tolling applies to filing notices of a claim in personal injury claims brought under the Federal Tort Claims Act. *See Hackensack Univ. Med. Ctr. v. Rossi*, 768 A.2d 254, 258 (N.J. Super. Ct. Law Div July 15, 1998) ("[T]he time within which a child must give notice of claim to a public entity is tolled until the child reaches majority … a parent has the same period of time as an injured child in which to file a notice of claim[.]" (citing *Hill v. Bd. of Educ. of Middletown Twp.*, 443 A.2d 225, 227-28 (N.J. Super. Ct. App. Div. Feb. 11, 1982))).

[5] Plaintiffs plead retaliation claims under the New Jersey Civil Rights Act (Count I), New Jersey Law Against Discrimination (Count IV), and Title IX (Count V) in their Complaint. (*See* Compl. ¶¶ 58-66, 81-95.) Defendants challenge R.F.'s individual standing to pursue retaliation claims under all three laws, but Plaintiffs respond only to their Title IX argument. (*See* Opp. at 29.) Therefore, Plaintiffs have failed to respond to Defendants' remaining substantive arguments and have thus waived R.F.'s right to plead individual retaliation claims brought under state law. *See Doe on behalf of Doe v. Small*, 654 F. Supp. 3d 376, 387 (D.N.J. 2023) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count." (citing *Jimenez v. T.D. Bank, N.A.*, No. 20-07699, 2021 WL 4398754, at *14 (D.N.J. Sep. 27, 2021))).

reinstat[ing] adverse findings." (*Id.*) To support their argument, Plaintiffs cite to *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005) for the proposition that Title IX claims are not limited to students. (Opp. at 29.) However, *Jackson* does not discuss the applicability of Title IX to parents of students.[6]

The Court begins with Defendants' prudential arguments and then turns to the constitutional analysis.

1. Prudential Standing

In *Lexmark*, the Supreme Court clarified that the broad principles that have been described as "prudential standing," including "the general prohibition on a litigant's raising another person's legal rights," rest primarily on statutory interpretation rather than "prudential" grounds. *Lexmark Intern., Inc.*, 572 U.S. at 126 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). The relevant statutory interpretation analysis assesses whether a plaintiff is within the "zone-of-interest" of a statutory right so that they have a cause of action to sue. *Id.* at 127 ("Whether a plaintiff comes within the zone of interests is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." (internal quotations and citations omitted)). Here, *Lexmark* requires this Court to assess whether, as a matter of statutory interpretation, "Title IX's prohibition on sex discrimination includes protection against retaliation directed at individuals who complain of discrimination" and whether the scope of that protection includes the parents of minor

[6] *Jackson* involved a high school athletic coach of a girls basketball team who raised complaints to his supervisors about the unequal funding and access to athletic equipment faced by his team. After being removed from his coaching duties, the coach filed suit under Title IX alleging retaliation for protesting discrimination against the girls' basketball team. *Jackson*, 544 U.S. at 172. The Supreme Court held that "retaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of the [Title IX] statute.'" *Id.* at 183 (quoting *Davis*, 526 U.S. at 642).

children. (*See* Opp. at 29.)

Moreover, the prudential standing argument raised by the appellant in *Lexmark* was based on the Supreme Court's decision in *Associated General Contractors of California, Inc. v. Carpenters*, 459 U.S. 519 (1983), which does not use the word "prudential" in its opinion, nor does it describe its analysis as assessing prudential limitations on standing. *See Lexmark Intern., Inc.*, 572 U.S. at 126. The analysis in *Associated General Contractors* discussed the "'scope of the private remedy created by' Congress in § 4 of the Clayton Act" and determined that the remedy applied only to a class of "plaintiffs whose injuries were proximately caused by a defendant's antitrust violations." *Id.* (quoting *Assoc. Gen. Contractors*, 459 U.S. at 532). In other words, *Associated General Contractors* decided whether a plaintiff had a cause of action under a statute, not whether the plaintiff's standing was prudential. Indeed, several Supreme Court decisions have affirmed that *Associated General Contractors* rested on statutory rather than "prudential" grounds. *See, e.g.*, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *see also Lexmark Intern., Inc.*, 572 U.S. at 126.

The Supreme Court in *Lexmark* effectively abrogated cases, such as *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004), that recognized prudential standing as a judicially imposed limit on a federal court's exercise of jurisdiction over a case or controversy. *See Lexmark Intern., Inc.*, 572 U.S. at 127 ("Although we admittedly have placed [the zone-of-interest] test under the 'prudential' rubric in the past, *see, e.g.*, *Elk Grove, supra,* at 12, 124 S. Ct. 2301, it does not belong there any more than *Associated General Contractors* does."). Here, Defendants cite to *Lexmark* for the proposition that prudential standing counsels against R.F. suing on behalf of O.F. (*See* Mot. at 16.) However, as discussed, *Lexmark* requires this Court to assess only Title IX's scope through statutory interpretation.

In *Oldham v. Pennsylvania State Univ.*, 138 F.4th 731 (3d Cir. 2025), the Third Circuit defined two factors that determine whether a plaintiff is within the zone-of-interest of the Title IX statute.[7] First, the recipient of Title IX funds must "'exercise substantial control' over the individual who mistreats the plaintiff based on sex." *Id.* at 746 (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999)). Second, the recipient "must have substantial control over 'the context' in which the mistreatment occurred or manifested." *Id.* at 746 (quoting *Davis*, 526 U.S. at 630). Thus, for Title IX to apply to R.F.'s claims, Defendants must have had (i) substantial control over the alleged retaliators and (ii) had substantial control over the context in which the alleged retaliation occurred or manifested. *See Oldham*, 138 F.4th at 746. However, the Court finds that it is not necessary to apply the zone-of-interest test to R.F. at this time because R.F. has not sufficiently alleged injury-in-fact for the purposes of constitutional standing.

2. Article III Standing

For a plaintiff to establish constitutional standing to bring a claim, they must plead (i) injury-in-fact; (ii) traceability between the alleged injury and the defendant's conduct; and (iii) redressability by a court's favorable decision. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff's injury must be both concrete and particularized. *See Spokeo, Inc. v.*

---

[7] The Court notes that *Oldham* held that the zone-of-interest test applies to Title IX, because the applicability of the test is presumptive to "*all* statutorily created causes of action … 'unless expressly negated.'" *Oldham*, 138 F.4th at 744 (quoting *Lexmark*, 572 U.S. at 129); *see also Bennett v. Spear*, 520 U.S. 154, 163 (1997). The Court further held that nothing in the text of Title IX rebuts this presumption, "[t]he presumptive application of the zone-of-interests test is similarly not rebutted with respect to Title IX's implied cause of action: nothing in that statute's original text or its later amendments suggests an intention to deviate from the common-law rule. *See* 20 U.S.C. §§ 1681, 1687. Thus, the zone-of-interests test applies to Title IX, and only those persons within the zone of interests it protects are eligible to sue under its implied cause of action." *Oldham*, 138 F.4th at 744. The Court also notes that no party has disputed the applicability of Title IX to Defendants as a recipient of federal funding.

*Robins*, 578 U.S. 330, 334 (2016). Here, R.F. does not allege a concrete and particularized injury that is specific to him.

The Complaint discusses various types of physical, mental, and emotional harm experienced by O.F. as a result of the alleged inadequate investigation of R.F.'s HIB complaints and campaign of retaliation. These include physical assaults, emotional distress, humiliation, educational harm, and the development of acute stress disorder and post-traumatic symptoms. (*See* Compl. ¶¶ 37, 57.) Without alleging any specific harm R.F. experienced due to Defendants' alleged retaliation, he has not adequality plead an injury in fact to bring a claim arising out of the events alleged in the Complaint.[8] Although the Complaint does allege that "Defendants intended to cause, or acted with reckless disregard of the substantial probability of causing, severe emotional distress to O.F. and his family," (*id.* ¶ 117), there is no discussion of R.F. specifically and if or how or to what extent he experienced "severe emotional distress" resulting from Defendants' alleged conduct. Accordingly, R.F. has failed to establish the constitutional requirements for standing, and his individual capacity claims against Defendants are **DISMISSED** without prejudice.[9]

### C. Exhaustion of Administrative Remedies

Next, Defendants argue that Plaintiffs' failure to fully exhaust their administrative

---

[8] In Plaintiffs' Opposition, R.F. alleges harm as "[a] parent who is subjected to retaliatory conduct for reporting discrimination against his child" and that such an injury is "cognizable … under federal civil rights law." (Opp. at 29.) But Plaintiffs cite no case law to support their argument and in any event, cannot amend their Complaint through their Opposition. *Save Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp. 3d 317, 335 (D.N.J. 2024) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018))).

[9] Although R.F.'s individual claims are dismissed without prejudice, the Court continues to refer to the claims as brought by "Plaintiffs" or "Plaintiffs' arguments" for the purpose of adjudicating the present Motion.

remedies under the Anti-Bullying Act bars Plaintiffs' claims. (Mot. at 17.) In response, Plaintiffs argue that as a matter of settled law, the exhaustion of administrative remedies is not required for a plaintiff to file suit under § 1983 or federal civil rights laws. (Opp. at 18-19.) The Court agrees with Plaintiffs; exhaustion of administrative remedies is not required in this instance.

In support of their argument, Plaintiffs properly cite to *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982) for the proposition that civil rights claims brought under § 1983 do not require state exhaustion. The Supreme Court in *Patsy* reversed a decision by the United States Court of Appeals for the Fifth Circuit, sitting *en banc*, which affirmed the dismissal of a claim brought under § 1983 by a district court for failure to exhaust available state administrative remedies. *See id.* at 516. The Supreme Court held that the question of whether administrative exhaustion is required is "answered by reference to congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." *Id.* at 501-02. The Court went on to hold that there was "serious doubt on the suggestion that requiring exhaustion of state administrative remedies would be consistent with the intent of the 1871 Congress." *Id.* at 503.

The same reasoning applies to claims brought under Title VI and IX—congressional intent controls whether state administrative exhaustion is required to bring a claim in federal court. *See id.* at 501-02. This Circuit applied this rationale in *Latino Project, Inc. v. City of Camden*, 701 F.2d 262, 265 (3d Cir. 1983) (determining there is "no requirement that plaintiffs must exhaust administrative remedies before bringing Title IX suit in federal court" and "no requirement that plaintiff must exhaust federal or state remedies before bringing Title VI suit in federal court" (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 707-08 n.41 (1978); *Chowdhury v. Reading Hosp. & Med. Ctr.*, 677 F.2d 317, 319, 322 (3d Cir. 1982))); *see also Mears v. Bd. of Educ. of Sterling*

*Reg'l High Sch. Dist.*, No. 13-3154, 2014 WL 1309948, at *4 (D.N.J. Mar. 31, 2014) ("[D]efendants' motion to have plaintiffs' [Title IX] claims dismissed on grounds that they failed to exhaust their administrative remedies will be denied.").

In light of the case law analyzed above, it is clearly established that Congress had no intent to require exhaustion of state administrative remedies in enacting either Title VI or Title IX.[10] Accordingly, Defendants' Motion to Dismiss on state exhaustion grounds is **DENIED**.

**D. *Res Judicata* and Collateral Estoppel**

Finally, Defendants argue that *res judicata* and collateral estoppel warrant dismissal of this action. (Mot. at 20.) Defendants contend that because Plaintiffs timely appealed HIB determinations to the Board in 2023 and the Complaint arises out of the same incidents that are the subject of the appeals, Plaintiffs are estopped from pursuing their claims. (*Id.*) Plaintiffs argue that *res judicata* is inapplicable because the federal claims were not raised in any of the state administrative proceedings, and collateral estoppel or claim preclusion "is not a blunt instrument that extinguishes federal constitutional and statutory causes of action whenever a plaintiff has

[10] Plaintiffs correctly note that Defendants' reliance on *Messerian-Esper for B.E. v. Fort Lee Bd. of Educ.*, BER-L-1547-21 (N.J. Super. Ct. Law Div. June 29, 2021) (unpublished) is misplaced because the plaintiff in that suit did not allege federal civil rights claims, and instead only alleged state statutory and torts claims. The other cases that Defendants cite involve completely different contexts than a civil rights suit brought under a federal statute and do not support the broad proposition that "administrative remedies should be fully explored before judicial action is sanctioned … in New Jersey." (Mot. at 19); *see Aircraft & Diesel Equip. Corp v. Hirsh*, 331 U.S. 752, 773-74 (1947) (holding "*where the intent of Congress is clear* to require administrative determination[,]" "judicial restraint in this respect are not lightly to be disregarded" in the context of a Second Renegotiation Acts case (emphasis added)); *Garrow v. Elizabeth Gen. Hosp. & Dispensary*, 401 A.2d 533 (1979) (holding exhaustion of administrative remedies is required prior to pursuing a due process claim); *K. Hovnanian Cos.s of N. Cent. Jersey, Inc. v. New Jersey Dept. of Env't Prot.*, 876 A.2d 847 (N.J. Super. Ct. App. Div. July 1, 2005) (holding a builder could not revoke a wastewater permit by filing a civil suit without first exhausting administrative remedies).

participated in a state administrative process addressing a different legal question." (Opp. at 20-22.) The Court finds Plaintiffs' arguments persuasive.

1. <u>Res Judicata (Claim Preclusion)</u>

To determine whether a state court judgment precludes subsequent federal court action, the federal court must look to "the law of the state that adjudicated the original action." *Mann v. Est. of Meyers*, 61 F. Supp. 3d 508, 517 (D.N.J. 2014) (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999)). Here, the applicable state law comes from New Jersey. New Jersey and federal law require the same three elements for *res judicata*:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (1991). Further, "[c]laim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.*; *see also Simoni v. Luciani*, 872 F. Supp. 2d 382, 388 (D.N.J. 2012).

The Court is persuaded by Plaintiffs' argument that "a state decision under one legal framework does not automatically extinguish distinct constitutional claims arising from the same factual background." (Opp. at 21.) Not only is this argument sensible because state administrative tribunals are limited forums where constitutional arguments are not intended to be raised, but also the precedent of this District compelled the Circuit to reach this conclusion. In *Bradley v. Pittsburg Board of Education*, 913 F.2d 1064, 1070 (3d Cir. 1990), the Third Circuit held that *res judicata* only applies where a claim was or could have actually been raised. *See id.* ("[*R*]*es judicata*, gives dispositive effect to a prior judgment if the particular issue, albeit not litigated in the prior action, *could have been raised*." (emphasis added)). Defendants have not shown how Plaintiffs could

have raised their § 1983, Title VI, and Title IX claims with the Board upon review of the School's HIB determinations. (*See* Opp. at 22 ("[A]rbitrary-and-capricious review is materially different from constitutional deliberate inference analysis.").)

Additionally, the Court finds that the third element of *res judicata* is not satisfied. The administrative appeals grew out of the HIB determinations made by the School's administrators. (*See generally* Compl.) Plaintiffs' claims in this Court allege a broader campaign by the Board to suppress HIB complaints raised by families, as evidenced by Shaver-Dock's whistleblower lawsuit alleging systemic violations of the Anti-Bullying Act. (*Id.* ¶ 46.) Although there are overlapping facts related to the state administrative appeals and the present case, factual overlap is insufficient to for a subsequent action to be barred by the doctrine of *res judicata* when a broader cause of action is stated. *See Gonzalez v. AMR*, 549 F.3d 219, 224 (3d Cir. 2008) (vacating a district court's determination that an employee's wrongful discharge claim was barred by *res judicata* due to a prior unemployment compensation proceeding).

2. <u>Collateral Estoppel (Issue Preclusion)</u>

Issue preclusion applies when the following requirements are satisfied:

> (1) the issue must be identical;
> (2) the issue must have actually been litigated in a prior proceeding;
> (3) the prior court must have issued a final judgment on the merits;
> (4) the determination of the issue must have been essential to the prior judgment; and
> (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.

*Del. River Port Auth. v. Fraternal Ord. of Police*, 290 F.3d 567, 573 (3d Cir. 2002). The analysis of Defendants' claims under the doctrine of issue preclusion is even more straightforward. The Court cannot find the application of issue preclusion to be viable when the claims brought before it were not actually brought or litigated in a prior proceeding. *See Mann*, 61 F. Supp. 3d at 521

("New Jersey's test for collateral estoppel asks whether the common issues were actually litigated in the earlier action."). Here, Defendants' Motion does not clearly distinguish their arguments between claim and issue preclusion. (*See* Mot. at 20-24.) In fact, Defendants do not allege that Plaintiffs actually litigated their civil rights claims in the state administrative forums, but rather argue the subject matter of Plaintiffs' arguments. (*See id.* at 23-24 ("The scope of this litigation will focus entirely on Defendants' judgment, decisions, and alleged bias while making administrative decisions related to the alleged HIB incidents.").) Since Plaintiffs present their federal civil rights claims for the first time in this Court, the Court finds that the first two elements of collateral estoppel, or issue preclusion, are not satisfied.

Accordingly, Defendants' Motion to Dismiss on issue and claim preclusion grounds is **DENIED**.

### E. Plaintiffs' Claims for Relief

The Court must also analyze the Complaint and decide whether Plaintiffs state plausible claims for relief pursuant to Rule 12(b)(6). Because Defendants did not make substantive arguments in their Motion, the Court considers Plaintiffs' arguments in their Opposition brief when assessing whether Plaintiffs satisfy the pleading standard. The Court holds that, except for Plaintiffs' federal retaliation and equal protection claims, Plaintiffs plausibly state their claims as to O.F.

#### 1. Title VI and Title IX Discrimination Claims

Plaintiffs argue that the Complaint makes out a valid deliberate indifference claim under Title IX (Count V). (*See* Opp. at 23; Compl. ¶¶ 87-95.) Plaintiffs allege "O.F. was subjected to severe, pervasive, and objectively offensive harassment by classmates on the basis of sex and gender" and that Defendants had "actual knowledge" of this harassment through R.F.'s reporting to the School's administrators. (Compl. ¶¶ 90-92.) Plaintiffs offer specific examples of the

instances of bullying they allege to be severe, pervasive, and objectively offensive. (*See id.* ¶¶ 24-26, 29-31, 35.) Plaintiffs further allege that Defendants' alleged indifference had a negative effect on O.F.'s ability to obtain educational opportunities. (*Id.* ¶ 95.) Plaintiffs also argue that Defendants' deliberate indifference constitutes discrimination on the basis of race in violation of Title VI due to their failure to investigate the racial harassment of O.F. (Count VI). (*Id.* ¶¶ 96-103.) More specifically, Plaintiffs allege that "Defendants' deliberate indifference to known racial harassment created a hostile educational environment that deprived O.F. of equal access to educational opportunities." (*Id.* ¶ 102.) For the reasons explained below, the Court finds that under a deliberate indifference theory of liability, Plaintiffs have plausibly stated a cause of action under Title IX for gender and sex discrimination and Title VI for racial discrimination.

**A. Title IX Sex and Gender Discrimination**

The Title IX standard of liability for boards of education is clearly established. The Supreme Court held in *Davis ex. Rel LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 646-47 (1999) that "recipients of federal funding may be liable for 'subjecting' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *See also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("[A] recipient's deliberate indifference to sexual harassment of a student by another student also squarely constitutes 'discrimination' 'on the basis of sex.'"). The harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. At this stage, Plaintiffs have made a plausible deliberate indifference claim under Title IX.

Plaintiffs allege that the ongoing period of sex-based harassment continued for months after R.F. reported complaints to the School's administrators and resulted in O.F.'s physical,

mental, and emotional distress, hindering his education. (Compl. ¶¶ 23-25, 30-33, 57.) O.F.'s treating psychiatrist, Dr. Carlos Mora, spoke at a March 1, 2023 Board hearing on O.F.'s appeal and testified that O.F. had developed acute stress disorder and post-traumatic symptoms. (*Id.* ¶ 32.) As discussed, O.F. is alleged to have been socially ostracized throughout the school year and to have been observed walking with a limp, wetting his pants, and expressing fear of his classmates. (*Id.* ¶¶ 15, 30.) Plaintiffs do not need to demonstrate that their ultimate success on the merits is likely at this time. To dismiss Plaintiffs' claim, the Court must find the theory alleged to be a "factual impossibility … shown from the face of the pleadings." *Twombly*, 550 U.S. at 561. The Court cannot make such a determination at this time. "A well-pleaded complaint may proceed even if … actual proof of those facts is improbable." *Id.* at 556. However, to ultimately prevail on the claim at a later stage, Plaintiffs must show that O.F.'s alleged victimization was so severe that he was deprived of access to the educational opportunities or benefits provided by the School. *See Davis*, 526 U.S. at 650.

**B. Title IX Retaliation Claim**

Plaintiffs also argue that they sufficiently plead a valid retaliation claim under Title IX. (Opp. at 25.) The Supreme Court in *Jackson* held that when "a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional discrimination on the basis of sex, in violation of Title IX." *Jackson*, 544 U.S. at 174; *see also Doe v. Mercey Cath. Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) ("Title VII's familiar retaliation framework generally governs Title IX retaliation claims." (citations omitted)). Plaintiffs allege that R.F.'s reporting of HIB complaints to the School's administrators resulted in retaliation in the form of "disciplinary actions, escalated scrutiny, and the reversal or manipulation of investigative findings." (Opp. at

25.) Plaintiffs also allege that temporal proximity between the alleged adverse actions and the reporting of the Complaint support an inference of retaliatory motive. (*Id.*)

To state a retaliation claim, a plaintiff must allege facts showing they "(1) engaged in constitutionally protected conduct, (2) suffered an adverse action at the hands of a public official, and (3) her constitutionally protected conduct was a substantial or motivating factor in the adverse action." *Williams v. Pennridge School District*, 782 F. App'x 120, 125 (3d Cir. 2019). The Court is not persuaded by Plaintiffs' retaliation arguments because the third element of causation has not been adequately pled.

Plaintiffs have not presented any details about the adverse HIB determination—such as the context or circumstances of the underlying claim—that would allow the Court to determine that R.F.'s complaints were its cause. The Court also notes that R.F. was notified about the investigation into O.F. in March 2023, (Compl. ¶ 33), and R.F.'s initial complaints to the School began in October 2022. (*Id.* ¶ 14.) In *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259 (3d Cir. 2007), which Plaintiffs cite to support their argument that temporal proximity can create an inference of retaliatory motive, the Third Circuit held that causation requires "an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." *Id.* at 267. Here, the Court does not find that the five-month period between R.F.'s complaints and the Defendants' investigation into O.F. is "unusually suggestive" of retaliatory basis. Although Plaintiff has alleged that the HIB finding against O.F. was reversed and then subsequently reinstated, (Compl. ¶¶ 38-42), the Court, without more, cannot conclude that these actions were taken to retaliate against R.F.'s complaints, which were made months prior. *See, e.g.*, *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("[A] gap of three months between the protected

activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.") To the extent that Plaintiffs' retaliation claim is based the Board's handling of R.F.'s complaints after the initial October 2022 report, Plaintiffs have not clarified with the specificity required by Rule 8(a) that their protected action caused the alleged retaliation. (*See* Opp. at 14-15; Fed. R. Civ. P. 8(a).)

Plaintiffs have presented no details about the Board's reasoning or the allegations made against O.F. from which the Court can plausibly conclude the findings were made because of R.F.'s complaints. Accordingly, Plaintiffs' retaliation claim brought under Title IX is **DISMISSED** without prejudice.[11]

### C. Title VI Race Discrimination

Similarly, the Third Circuit has held that Title IX's deliberate indifference framework applies to claims brought under Title VI in certain circumstances. "[D]eliberate indifference may, in certain circumstances, establish intentional discrimination for the purposes of a Title VI claim." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014). Quoting the framework stated in *Davis*, the Third Circuit held in *Blunt* that "a plaintiff must show that the school district had knowledge of the alleged misconduct and the power to correct it but nonetheless failed to do so." *Id.* This requires establishing "(1) substantial control, (2) severe and discriminatory harassment, (3) actual knowledge, and (4) deliberate indifference." *Id.* (quoting *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664-65 (2d Cir. 2012)). For similar reasons stated in the Court's Title IX analysis, the Court holds that Plaintiffs allege plausible facts showing Defendants were

[11] Although Plaintiffs' opposition brief only asserted an argument that the Title IX retaliation claim was valid, the Court finds that Plaintiff also fails to state a retaliation claim under Title VI, because the standard to state a cause of action for retaliation is the same under both statutes. *See Williams*, 782 F. App'x at 125 ("We apply the same standard for a retaliation claim whether raised under Title VI[ or] Title IX.").

deliberately indifferent in responding to O.F.'s complaints of discrimination based on his race and other protected characteristics.

First, Defendants plausibly exercised "substantial control" over the circumstances of the misconduct since the alleged HIB occurred during the academic year and on the school premises. (Compl. ¶¶ 14, 99); *see Blunt*, 767 F.3d at 273. The alleged harassment was also reported to the School's administrators. (Compl. ¶¶ 100-01.) Second, the harassment was also allegedly severe enough to result in physical assaults, exclusion, trauma, and other damage. (*Id*. ¶¶ 24, 32, 36, 102); *see Blunt*, 767 F.3d at 273. Finally, Shaver-Dock's whistleblower lawsuit, as alleged, substantiates Plaintiffs' claim that Defendants knew of their misconduct and deliberately failed to correct it. (*See id*. ¶¶ 45, 51-56.) The Court therefore finds that Plaintiffs' alleged facts present a plausible claim under Title VI. Since New Jersey's Law Against Discrimination is interpreted as analogous to Title VI, Plaintiffs' claims brought under that statue (Count IV) shall proceed as well. *See Serodio v. Rutgers*, 27 F. Supp. 3d 546, 555 (D.N.J. 2014) ("Courts generally analyze NJLAD claims by reference to the analogous federal antidiscrimination statute and based on the guidance of federal court decisions interpreting and applying the analogous statute.").

2. Equal Protection Claims

Plaintiffs' Complaint alleges discrimination claims under the New Jersey Civil Rights Act (Count I) and the Fourteenth Amendment's Equal Protection Clause under § 1983 (Count II). (Compl. ¶¶ 58-74.) For the reasons stated below, the Court finds that Plaintiff has plausibly alleged discrimination on the basis of O.F.'s race or any protected characteristic under state law but not the federal constitution.

**A. Section 1983 Claims**

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend.

XIV, § 1. The Clause at its core requires similarly situated individuals to be treated the same. *N.N. v. N. Burlington Cnty. Reg'l Sch. Dist.*, No. 23-1280, 2026 WL 1845039, at *10 (D.N.J. June 26, 2026). Notably, unlike statutory claims brought under Titles IX and VI, deliberate indifference is insufficient to establish a federal constitutional violation of equal protection—rather, a plaintiff must show purposeful discrimination to succeed on an Equal Protection Clause claim. *See Blunt*, 767 F.3d at 273 ("To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection [under Amendment XIV], plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they received different treatment from that received by other individuals similarly situated." (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990))). Here, the Court is not persuaded from these facts that Defendants failed to protect O.F. *because* of his sex, gender, race, or national origin.

Plaintiffs present a plausible argument that the Board routinely denied HIB complaints to conceal incidents, which undermines the allegation that O.F.'s complaint was denied on the basis of his race, sex, or national origin. (*See id.* ¶¶ 45-46, 70.) The Court cannot find that Defendants "treated [O.F.] differently from other students by refusing to protect him from bullying while retaliating against him" when Defendants are also alleged to have engaged in a policy of suppressing HIB complaints. (*Id.* ¶¶ 45, 61.) Plaintiffs do not allege that only members of O.F.'s class were subjected to unequal treatment and do not plausibly show that O.F.'s protected characteristics were the reason why O.F. was subjected to the alleged harm by Defendants. Nor have Plaintiffs made a claim for selective treatment or presented similarly situated individuals of different protected backgrounds who were treated in a preferential manner. *See Blunt*, 767 F.3d at 273 ("[A]n essential element of a claim of selective treatment under the Equal Protection Clause is that the comparable parties were 'similarly situated.' Persons are similarly situated under the

Equal Protection Clause when they are alike 'in all relevant aspects.'" (quoting *Startzell v. City of Phila.*, 522 F.3d 183, 203 (3d Cir. 2008))).

Accordingly, the Court holds that Plaintiffs' equal protection claim brought under § 1983 (Count II) is **DISMISSED** without prejudice.

### B. New Jersey Civil Rights Act Claims

The Court notes that the analysis of civil rights claims under the New Jersey Constitution differs from analysis under the U.S. Constitution. *See Greenberg v. Kimmelman*, 494 A.2d 294, 302 (N.J. 1985) ("The analysis of fundamental rights under the New Jersey Constitution differs from analysis of those rights under the United States Constitution."); *UAW v. New Jersey Governor Philip Murphy*, 352 A.3d 402, 420 (N.J. Super. Ct. App. Div. Jan. 26, 2026) ("Under [the New Jersey Constitution], a right need not be labeled 'fundamental' or a classification deemed 'suspect' to trigger searching judicial review." (quoting Robert F. Williams & Ronald K. Chen, The New Jersey State Constitution 58 (3d ed. 2023))). The equal protection analysis under the New Jersey State Constitution, as articulated in *UAW*, "considers three aspects: (1) the nature of the affected right; (2) the extent to which the governmental restriction intrudes upon it; and (3) the public need for the restriction." *Sun Prop. Mgmt., Inc. v. Borough of Seaside Heights*, No. A-2683-23, 2026 WL 2083659, at *8 (N.J. Super. Ct. App. Div. July 20, 2026) (quotations omitted).

New Jersey courts have determined that the state constitutional balancing test "by its nature requires fact-specific analysis" into the restriction's toll on a plaintiff's rights. *Id.* The Court therefore finds it appropriate to allow Plaintiffs' equal protection claims under the New Jersey Civil Rights Act (Count I) to survive at this time so that Plaintiffs may establish the existence of a government restriction infringing on Plaintiffs' rights under the state constitution.

3. *Monell* Claim

The Court also finds that Plaintiffs' *Monell* claim is plausible. Facts arising out of Shaver-Dock's March 2025 whistleblower complaint may support Plaintiffs' claim that the Board, through officials with final policymaking authority, engaged in a systematic policy, practice, or custom of showing deliberate indifference to HIB complaints. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality, such as the School District, can face civil liability under § 1983 only where the municipality itself causes the constitutional violation at issue." *Lesher v. Zimmerman*, 822 F. App'x 116, 120-21 (3d Cir. 2020) (citations omitted); *see also Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018) ("Under *Monell*, a plaintiff may bring a claim under Section 1983 against a municipality if deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." (citations omitted)). Plaintiff alleges that the Board supported "a municipal custom of manipulating investigative outcomes and retaliating against complainants." (Opp. at 27.) It is plausible that facts may be discovered that show whether Plaintiffs' allegations are supported, and whether an official with final policymaking authority adopted or imposed the policy. Therefore, the Court holds that Plaintiffs have met their pleading burden at this stage.

4. State Tort Law Claims

Finally, Plaintiffs' Complaint alleges a state law cause of action for intentional infliction of emotional distress ("IIED") and negligence. (*See* Compl.) For IIED, the Court finds that the allegations that Defendants systematically suppressed O.F.'s HIB complaints constitutes plausible extreme or outrageous conduct. *See Lockart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 738 (D.N.J. 2015) ("A claim of intentional infliction of emotional distress requires the plaintiff to plead 'intentional and outrageous conduct by the defendant, proximate cause, and distress that is

severe.'" (quoting *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998)). For negligence, Plaintiffs' Complaint alleges Defendants fell below their duty of care by failing "to provide a safe and non-discriminatory educational environment" and "comply with the requirements of the New Jersey Anti-Bullying Bill of Rights Act," which presents a plausible breach of duty for the purposes of this Motion. (*See* Compl. ¶¶ 105-06); *see also Frugis v. Bracigliano*, 827 A.2d 1040, 1059 (N.J. 2003) (holding school boards have "a duty to protect students entrusted to its care from foreseeable risks of harm, including intentional harms caused by school personnel"); *L.E. v. Plainfield Pub. Sch. Dist.*, 194 A.3d 105, 112 (N.J. Super. Ct. App. Div. Oct. 5, 2018) (finding "school personnel's supervisory responsibilities may extend to the prevention of unwanted sexual encounters between students").

Accordingly, the Court finds that Plaintiffs' alleged facts present plausible claims under New Jersey tort law, and Plaintiffs' IIED and negligence claims shall proceed.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED** in part and **GRANTED** in part. The Complaint is **DISMISSED** in its entirety without prejudice as to R.F.'s individual claims for lack of standing. O.F.'s federal retaliation claims and federal equal protection claims are **DISMISSED** for failure to state a claim upon which relief could be granted; the remaining counts of the Complaint as to O.F. shall **PROCEED**. An appropriate Order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Andre M. Espinosa, U.S.M.J.
Parties